UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

GUNNALLEN FINANCIAL, INC.

Bankr Case No.: 8:10-ap-949-MGW

---

GUNNALLEN FINANCIAL, INC., and
GUNNALLEN HOLDINGS, INC.,

    Plaintiffs,

Case No.: 8:10-cv-2855-T-24

v.

U.S. SPECIALTY INSURANCE
COMPANY,

    Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion to Withdraw the Reference. (Doc. No. 1). Plaintiffs oppose the motion. (Doc. No. 1, Ex. 1 & 2). Defendant has filed a reply brief. (Doc. No. 4).

**I. Background**

GunnAllen Financial, Inc. ("GAF") was a broker-dealer engaged in the business of effecting securities transactions. On April 26, 2010, GAF filed for bankruptcy under Chapter 11. Prior to filing for bankruptcy, sixty-four of GAF's customers had asserted claims against GAF, GAF's parent company, GunnAllen Holdings, Inc. ("GAH"), and nine of their officers and directors.

Defendant U.S. Specialty Insurance Company ("USSIC") had issued GAF and GAH (collectively, "Plaintiffs") several Directors, Officers, and Organization Liability insurance policies ("D&O policies") prior to GAF filing for bankruptcy. Plaintiffs and the nine directors and officers sought coverage under the D&O policies for the customer claims under the following policy provision[1]:

INSURING AGREEMENTS
    (A)    The Insurer will pay to or on behalf of the [Directors and Officers for] **Loss** arising from **Claims** first made against them during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts**.
    (B)    The Insurer will pay to or on behalf of [GAH and GAF for] **Loss** arising from **Claims** first made against [them] during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts**.

(AP. Doc. No. 1, Ex. A-D). However, the insurance policies at issue also contain a Condition D that provides the following:

> If the Insurer is obligated to pay **Loss**, including **Defense Costs**, under more than one INSURING AGREEMENT . . . the Insurer will first pay any **Loss** payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all **Loss**, including **Defense Costs**, is likely to exceed [$5,000,000], the Insurer shall be entitled to withhold some or all of any **Loss** payable under INSURING AGREEMENT (B) to ensure that as much of the [$5,000,000] as possible is available for the payment of **Loss** under INSURING AGREEMENT (A).

(AP Doc. No. 1, Ex. A-D).

USSIC denied coverage for Plaintiffs and the directors and officers for fifty-four of the customer claims. As a result, on August 2, 2010, Plaintiffs initiated an adversary proceeding against USSIC, in which Plaintiffs assert the following three claims: (1) a request for declaratory relief regarding the availability of insurance coverage for the

---

[1] The policies are attached to Doc. No. 1 in the underlying adversary proceeding, case number 8:10-ap-949-MGW. References to documents in the adversary proceeding will be made as "AP Doc. No." References to documents in the underlying bankruptcy case (case number 8:10-bk-9635-MGW) will be made as "BK Doc. No."

customer claims, (2) a claim for breach of contract due to the denial of coverage, and (3) a claim for attorneys' fees. After filing an answer to the complaint, USSIC moved to withdraw the reference for this adversary proceeding.

## II. Jurisdictional Analysis

### Bankruptcy Court Jurisdiction

The United States Code grants bankruptcy jurisdiction to Article III district courts. Specifically, 28 U.S.C. § 1334(b) states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Congress provided in 28 U.S.C. § 157(a) that each district court may refer all cases "arising under," "arising in," or "related to" Title 11 proceedings to the bankruptcy judges for the district. This Court has a standing order referring all bankruptcy matters to the bankruptcy courts.

A finding that a matter is "related to" a bankruptcy case confers subject matter jurisdiction to the bankruptcy court and empowers it to hear the non-core matter. In re Happy Hocker Pawn Shop, Inc., 212 Fed. Appx. 811, 817 (11th Cir. 2006). However, under § 157(c), the bankruptcy court's power to determine a non-core matter is limited, as compared to its power to hear and determine core matters under § 157(b)(1). Specifically, the bankruptcy court has the power to determine matters properly before it under title 11, but with respect to "related to" or non-core matters, an Article III court must render final judgment unless the parties consent to allow the bankruptcy court to handle the matter. 28 U.S.C. § 157(b) and (c).

## Standard Governing Permissive Withdrawal of Reference

The standard for permissive withdrawal is stated in §157(d): "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under [§ 157], on its own motion or on timely motion of any party, for cause shown." Congress has not given a definition or explanation of the "cause" required for permissive withdrawal, but the Eleventh Circuit has stated that cause "is not an empty requirement." In re Parklane/Atlanta Joint Venture, 927 F.2d 532, 536 (11th Cir.1991).

In determining whether the movant has established sufficient cause, "a district court should consider the advancement of uniformity in bankruptcy administration, decreasing forum shopping and confusion, promoting the economical use of the parties' resources, and facilitating the bankruptcy process." Control Ctr., L.L.C. v. Lauer, 288 B.R. 269, 274 (M.D. Fla. 2002)(citations omitted). Other factors to consider are: "(1) whether the claim is core or non-core; (2) efficient use of judicial resources; (3) a jury demand; and (4) prevention of delay." Id. (citations omitted). The Eleventh Circuit has noted that "the cause prerequisite should not be used to prevent the district court from properly withdrawing reference either to ensure that the judicial power of the United States is exercised by an Article III court or in order to fulfill its supervisory function over the bankruptcy courts." Parklane, 927 F.2d at 538. The determination of whether to grant a motion for permissive withdrawal is within the court's discretion. See In re TPI Int'l Airways, 222 B.R. 663, 668 (S.D.Ga.1998)(citations omitted).

### III. Motion to Withdraw the Reference

USSIC argues that withdrawing the reference in this case is proper for three reasons: (1) the adversary proceeding is a non-core matter; (2) GAF lacks standing to bring the adversary complaint; and (3) USSIC has requested a jury trial. Accordingly, the Court will address each argument.

#### The Core or Non-Core Status of the Proceedings

USSIC argues that the adversary proceeding against it is a non-core proceeding. If a proceeding is determined to be non-core, the bankruptcy court may only submit proposed findings of fact and conclusions of law that are subject to de novo review by a district court. 28 U.S.C. § 157(c)(1). Therefore, if a proceeding is found to be non-core, there is a stronger argument for withdrawing the reference. See Control Ctr., 288 B.R. at 275.

This Court has stated that the determination of whether a matter is core or non-core "'should first be made by the bankruptcy court.'" In re Stone, No. 8:10-cv-2517-JDW, 2010 WL 5069698, at *1 (M.D. Fla. Dec. 7, 2010)(citing In re Hvide Marine Inc., 248 B.R. 841, 845 n. 5 (M.D. Fla. 2000); TPI Int'l, 222 B.R. at 668 n. 3); 28 U.S.C. § 157(b)(3). Neither party has argued that the bankruptcy court has made a determination regarding whether the adversary proceeding is a core or non-core proceeding, and this Court is not inclined to make that determination.[2] As such, the Court will not consider

---

[2] The Court notes that Plaintiffs argue that the bankruptcy court specifically retained jurisdiction in its Confirmation Order to preside over insurance related disputes. While the Plan and Confirmation Order do indicate an intent for the bankruptcy court "[t]o determine, to the greatest extent permitted by applicable law," all issues related to the insurance policies, USSIC points out that the Confirmation Order also states that the

this factor in its analysis of the propriety of withdrawal. See TPI Int'l, 222 B.R. at 668 n.3 (stating that the court would not consider this factor due to the fact that the bankruptcy court had not determined whether the proceedings were core or non-core).

### Whether GAF has Standing to Bring the Adversarial Proceeding

USSIC argues that GAF (the debtor) does not have standing to bring the adversary proceeding, which makes the underlying insurance coverage dispute even less connected to the bankruptcy case and provides cause for withdrawing the reference. The Supreme Court has defined standing as follows:

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc., 528 U.S. 167, 180-81 (2000)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

In this case, the insurance policies contain the following provision:

> INSURING AGREEMENTS
> (A) The Insurer will pay to or on behalf of the [Directors and Officers for] **Loss** arising from **Claims** first made against them during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts**.
> (B) The Insurer will pay to or on behalf of [GAH and GAF for] **Loss** arising from **Claims** first made against [them] during

---

insurance companies have the right to challenge the exercise of jurisdiction by the bankruptcy court. (BK Doc. No. 266, para. 13.2.24; BK Doc. No. 448, para. 12(e)). Accordingly, the Plan and Confirmation Order do not weigh in favor or against withdrawing the reference.

6

>   the **Policy Period** or Discovery Period (if applicable) for
>   **Wrongful Acts**.

(AP. Doc. No. 1, Ex. A-D). As such, GAF has standing to assert the claims at issue, because it is an insured under Insuring Agreement (B).

While USSIC acknowledges that GAF and GAH are insureds under Insuring Agreement (B), USSIC argues that Condition D of the insurance policies clearly provides that GAF and GAH's interest in payment under Insuring Agreement (B) is subordinate to the directors and officers' superior interest in payment under Insuring Agreement (A). Condition D to the policies provides the following:

>   If the Insurer is obligated to pay **Loss**, including **Defense Costs**, under more than one INSURING AGREEMENT . . . the Insurer will first pay any **Loss** payable under INSURING AGREEMENT (A) and, if the Insurer concludes that the amount of all **Loss**, including **Defense Costs**, is likely to exceed [$5,000,000], the Insurer shall be entitled to withhold some or all of any **Loss** payable under INSURING AGREEMENT (B) to ensure that as much of the [$5,000,000] as possible is available for the payment of **Loss** under INSURING AGREEMENT (A).

(AP Doc. No. 1, Ex. A-D).

The Court agrees that the directors and officers have a superior interest in payment under the policies for the customer claims at issue if the claims are covered under the policies; however, it is not clear to the Court that GAF and GAH cannot also recover under the policies along with the directors and officers. This is because the Court does not know whether the alleged loss for the directors and officers due to the customer claims is likely to exceed $5 million. If the directors and officers' loss is not likely to exceed $5 million, then both Plaintiffs and the directors and officers could recover under the insurance policies at issue. Given the limited facts before the Court, it appears

possible that GAF could recover under the insurance policies, and as such, it has standing to assert a coverage claim under the policies.

### Issue of Jury Demand

USSIC has demanded a jury trial, and it does not consent to a jury trial in the bankruptcy court. Therefore, USSIC asserts that, for this reason alone, withdrawal of the action from the Bankruptcy court is warranted.

Plaintiffs do not dispute that USSIC is entitled to a jury trial on the breach of contract claim. Furthermore, § 157(e) states: "[i]f the right to a jury trial applies in a proceeding that may be heard under [§ 157] by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." As such, under § 157(e), USSIC's refusal to consent to a jury trial in the bankruptcy court entitles it to a jury trial in the district court. Therefore, the reference will have to be withdrawn for the jury trial.

However, courts have held that even if withdrawal is appropriate, a district court can allow the bankruptcy court to retain jurisdiction to address all pretrial matters, from discovery through dispositive motions. See Stone, 2010 WL 5069698, at *1 (finding that the case did not need to be immediately withdrawn from the bankruptcy court and that the bankruptcy court could handle all pretrial matters); In re Ausburn, 2010 WL 5128332, at *2 (M.D. Fla. Dec. 10, 2010)(same); In re Tate, 2010 WL 320488, at *9 (S.D. Ala. Jan. 19, 2010)(same); In re Southwest Fla. Heart Group, PA, 2007 WL 924472, at *2 (M.D. Fla. Mar. 26, 2007)(stating that judicial resources, as well as the parties' resources, would be best conserved by having the bankruptcy court address all preliminary matters in the

case); Hvide, 248 B.R. at 845. This Court agrees with those courts and finds that the bankruptcy court shall retain jurisdiction to address all pretrial matters.

## IV. Conclusion

This Court finds that USSIC has established cause for withdrawing the reference so that this Court can conduct the jury trial in this case. However, since the adversary proceeding is still in its initial stage, withdrawal at this time is unnecessary. The Court believes that judicial resources, as well as the parties' resources, would be best conserved by having the bankruptcy court address all pretrial matters in the case, from discovery through dispositive motions.

Accordingly, it is ORDERED AND AJUDGED that:

(1) USSIC's Motion to Withdraw the Reference (Doc. No. 1) is **GRANTED TO THE EXTENT THAT** the adversary proceeding reference is withdrawn only as to the jury trial and jury selection; all pretrial matters shall be handled by the bankruptcy court.

(2) The Clerk is directed to **ADMINISTRATIVELY CLOSE THIS CASE.**

(3) USSIC is directed to file a motion to reopen the case after the bankruptcy court has addressed all pretrial matters and the parties are ready for trial. If the adversary proceeding gets resolved without the need for a trial, USSIC is directed to file a notice informing the Court of such resolution.

**DONE AND ORDERED** at Tampa, Florida, this 3rd day of February, 2011.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge